FILED

02/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0267

DA 22-0267

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 35N

IN THE MATTER OF THE ESTATE OF:

BARBARA KAY LEWIS,

Deceased.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DG-20-024(B)
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Randall A. Snyder, Snyder, Beaudry & Cook, Bigfork, Montana

For Appellee:

Marybeth M. Sampsel, Kelly R. O'Brien, Measure Law, P.C.,
Kalispell, Montana

Submitted on Briefs:  January 25, 2023

Decided:  February 28, 2023

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Edmund Langlois (Langlois) appeals from the Findings of Fact, Conclusions of Law, and Order issued by the Eleventh Judicial District Court on May 3, 2022, requiring that he reimburse the Estate of Barbara Kay Lewis (Estate) in the amount of $15,111.71 and that he pay his attorney's fees and costs. We affirm in part and reverse in part.

¶3 On May 6, 2020, the District Court issued an order appointing Langlois as guardian and conservator to Barbara Kay Lewis (Barbara). Barbara passed away on June 26, 2021. On July 19, 2021, the court issued an order appointing Maranda Johnson (Johnson), Barbara's daughter, as personal representative of the Estate.

¶4 On December 6, 2021, Langlois, by and through his counsel, submitted an inventory of Barbara's estate. On December 7, 2021, Langlois filed the Final Accounting, Motion to Approve the Final Accounting, and Motion to Dismiss Guardianship. On February 8, 2022, Johnson, in her capacity as personal representative, objected to each filing by Langlois. Johnson specifically objected to Langlois's failure to comply with the accounting obligations imposed by § 72-5-424(2), MCA, his use of Barbara's funds for personal

benefit, his commingling of Estate funds with his personal funds, and his improper disposal of Estate property.

¶5 Johnson challenged two aspects of Langlois's accounting. First, Langlois included $5,080 for "horse care." Langlois testified that he had a horse packing business that owned several horses. He reports that Barbara made donations of hay to the horses during her lifetime. Langlois admitted to using funds from Barbara's accounts to purchase hay for the business's horses during his time as her guardian and conservator. He also acknowledged that Barbara did not own a horse over that same period.

¶6 Second, Langlois included $10,031.71 for reimbursements of expenses incurred in fulfillment of his duties as Barbara's guardian and conservator. He testified that he wrote monthly rent checks to himself for the period Barbara resided with him. Langlois acknowledged that he did not track these general expenses nor keep receipts from those expenses despite reimbursing himself.

¶7 Johnson also objected to Langlois retaining Barbara's personal property—including, but not limited to, a desk and leather couches—upon her death and disposing of such property without notifying Johnson. Langlois retained but did not dispose of Barbara's horse trailer.

¶8 The District Court concluded that Langlois breached his fiduciary duty—detailed in §§ 72-38-801 through -813, MCA, and made applicable to conservators through § 72-5-423, MCA—in three ways: first, he did not take reasonable steps to control and protect Barbara's personal property (see § 72-38-809, MCA); second, he failed to keep adequate records and to refrain from commingling funds (see § 72-38-810, MCA); and,

3

third, he did not promptly respond to Johnson's request for information (*see* § 72-38-813, MCA). The court additionally determined that Langlois's recordkeeping fell short of his obligation to keep "suitable records." Section 72-5-424(2), MCA; *see* § 72-5-438(1), MCA (requiring a conservator to account to the court or successors of the protected person upon termination of a conservatorship). The court ordered Langlois to reimburse the Estate for $15,111.71. The court also declined to grant Langlois's request for attorney's fees incurred in response to Johnson's objection and the resulting hearing.

¶9 Langlois argues that the District Court's Findings of Fact and Conclusions of Law were in error and unsupported by evidence. We review a trial court's findings of fact to determine whether those findings are clearly erroneous. *In re Guardianship & Conservatorship of Elizabeth Saylor,* 2005 MT 236, ¶ 10, 328 Mont. 415, 121 P.3d 532. A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a firm conviction that a mistake has been made. *In re Guardianship of Saylor,* ¶ 10. As applied to accountings submitted for conservatorships, the clearly erroneous test requires that an accounting must be accurate, complete, and verifiable. *In re Guardianship of Saylor,* ¶ 10. This Court reviews a trial court's determination of law de novo. *In re Guardianship of Saylor*, ¶ 10.

¶10 The District Court did not abuse its discretion in setting forth its findings of fact and in deciding that Langlois's accounting was not accurate, complete, and verifiable. The court carefully scrutinized Langlois's accounting and testimony. The court was under no obligation to apply a greater weight to Langlois's summary of his relationship with

4

Barbara, his interpretation of her wishes, nor his arguments regarding what constituted reasonable expenses. Langlois had the opportunity to provide any and all receipts accounting for the expenses in question. Instead, he provided a chart of alleged monthly expenses and reported a lump sum expense for hay for his horses.

¶11 Langlois contends that the court misinterpreted § 72-5-438(3), MCA. However, as set forth below, we find no error with the court's determination that the law applied to the facts of this case authorized the court to order a reimbursement based on Langlois's breach of his fiduciary duty. Though the court recited a flawed version of § 72-5-438(3), MCA, this Court will "affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason." *City of Kalispell v. Omyer*, 2016 MT 63, ¶ 9, 383 Mont. 19, 368 P.3d 1165. In other words, the court's misstatement of law was not dispositive with respect to the correctness of its legal conclusions.

¶12 Langlois asserts that the court erred in ordering Langlois to reimburse the Estate $15,111.71. He contends that the court was not sitting in equity and, therefore, exceeded its authority by ordering him to reimburse the Estate, rather than requiring an audit of his accounting.

¶13 A court of equity has jurisdiction over an alleged breach, abuse, or betrayal of a duty or obligation arising out of fiduciary relations. *In re Guardianship of Saylor,* ¶ 32 (internal citations and quotations omitted). An equity court with jurisdiction over a controversy may

5

render final judgment in relation to all matters involved and growing out of that controversy. *In re Guardianship of Saylor,* ¶ 33.[1]

¶14 The District Court after reviewing the record, including Langlois's accounting and testimony, concluded that he fell short of his fiduciary duties as guardian and conservator with respect to documentation of expenses and management of personal property. The court relied on testimony provided by Langlois, such as that the hay fed horses owned by his business and that Barbara did not own horses for the duration of the relevant period, to reach its conclusion that Langlois did not keep suitable records. Additional testimony heard and documentation received by the court further supported its conclusion. For example, Langlois did not provide any credit card receipts or statements to evidence his expenses and he admitted to reimbursing himself for "what [Barbara] had normally paid in years past" as well as for expenses he perceived Barbara "would have insisted" be reimbursed. Finally, Langlois acknowledged that he "unilaterally elected to dispose" of Barbara's personal property.

¶15 We affirm the District Court's decision to order a reimbursement. Though § 72-5-438(3), MCA, grants a court the discretionary authority to require an audit, the provision does not place a mandate on the court to do so nor a bar on the court's ability to order reimbursement. The court's thorough examination of the record indicated that Langlois breached his fiduciary duty and did not meet his burden of proving the proper

---

[1] Langlois argues that, because *In re Guardianship of Saylor* included a vigorous dissent, that the precedential value of the majority's opinion is diminished. Dissent, however strong, from precedential cases does not prevent this Court from relying on that precedent.

disposition of the property under his control. *See In re Estate of Clark*, 237 Mont. 179, 183, 772 P.2d 299, 302 (1988). Acting in equity, the court had the authority to grant complete relief, including reimbursement.

¶16 The District Court directed Langlois to pay his attorney's fees. Langlois claims he is entitled to payment by the Estate for those fees. Additionally, he alleges that Johnson and the court sought to punish him by refusing to award such fees.

¶17 A District Court's grant or denial of attorney's fees is reviewed for an abuse of discretion. *In re Conservatorship of J.R.*, 2011 MT 62, ¶ 77, 360 Mont. 30, 252 P.3d 163.

¶18 Montana law expressly allows conservators to hire attorneys to assist them in estate administration, including defense or prosecution of actions to protect the estate. Section 72-5-427(3)(w), (x), MCA. In limited circumstances, attorneys are entitled to reasonable compensation from the estate. *See* § 72-5-432, MCA.

¶19 Langlois cites several cases in which attorney's fees were granted to support his contention that such fees should be awarded. However, each of those cases is easily distinguishable from the facts of this case.

¶20 In *In re Guardianship of A.M.M.*, 2015 MT 250, ¶ 66, 380 Mont. 451, 356 P.3d 474—one of the cases Langlois cites—this Court concluded that "an attorney specifically appointed as a conservator, rather than one hired by a conservator, is entitled to reasonable fees for legal work done in administration and/or protection of the estate." Here, Langlois is not requesting fees for the legal services he provided the estate nor was the legal work in question done in administration and/or protection of Barbara's estate. As summarized

7

by the District Court, Langlois's attorney's fees were incurred in response to "the objection and hearing," both of which pertained to the interests of Langlois, not those of the Estate.

¶21 Another case Langlois cites, *Swenson v. Janke*, 274 Mont. 354, 361, 908 P.2d 678, 682-83 (1995), dealt with the reasonableness of an award of attorney's fees, not whether such fees should be awarded in the first place, in a landlord-tenant dispute. The reasonableness of an award is not at issue in this case and distinct laws govern attorney's fees with respect to matters involving conservators.

¶22 Finally, Langlois cites *In re J.R.* to argue for the award of attorney's fees. In that case, this Court upheld a district court's decision to award attorney's fees on the basis that the fees were not used to defend the conservator in their individual capacity, but rather to explicitly protect the conservatorship. *In re J.R.*, ¶ 68.

¶23 Given our affirmation of the District Court's Findings of Fact and Conclusions of Law in this case, which suggest this action was meant to defend Langlois rather than the Estate, we conclude that the court did not abuse its discretion by denying attorney's fees incurred following Johnson's objection on February 8, 2022. However, the court should calculate and award Langlois his attorney's fees resulting from services rendered by his counsel prior to Johnson's objection to the extent those services pertained to administration of the estate, not Langlois's defense.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶25    Affirmed in part and reversed in part.

/S/ MIKE McGRATH

We Concur:

/S/ JIM RICE
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA